AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of California

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )       Case No.   24MJ3965-VET
Apple iPhone cellular phone )
FP&F 2024250600062701-0003 )
)

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC 545 | Importation Contrary to Law/Smuggling |
| 16 USC 1538 and 1540 | Unlawful Trafficking in Wildlife |

The application is based on these facts:
See attached affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*/s/ John Pritting*
Applicant's signature

U.S. Fish and Wildlife Service Special Agent John Pritting
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
___telephone___ *(specify reliable electronic means)*.

Date: October 17, 2024

*/s/ Valerie E. Torres*
Judge's signature

City and state: San Diego, California          The Honorable Valerie E. Torres
Printed name and title

## Attachment A

### THE PROPERTY TO BE SEARCHED

The following property is to be searched:

    Black Apple iPhone

    Cellular number: 619-395-1909

    assigned unique identifier FP&F 2024250600062701-0003)

    ("**Target Device**")

**Target Device** is currently in the possession of the United Stated Fish and Wildlife Service, Office of Law Enforcement Field Office, 610 W. Ash St. Suite 1103. San Diego, CA

**ATTACHMENT B**

  The following evidence to be searched for and seized is limited to evidence of violations of Title 18, U.S.C. § 545 (Smuggling/Importation Contrary to Law); and Title 16 U.S.C. § 1538 (c) and (d) and 1540 (b)(1) (Unlawful Trafficking in Wildlife), for the period from August 16, 2024, to September 14, 2024:

Communications, records, or data including but not limited to emails, text messages, photographs, audio files, videos, or location data:

  a. tending to indicate efforts to import, export, purchase, sell, transport and/or ship sea cucumbers, and/or other wildlife protected by the Convention on International Trade in Endangered Species (CITES), including related financial information;

  b. consisting of images of sea cucumbers and/or other wildlife protected by the Convention on International Trade in Endangered Species;

  c. tending to indicate knowledge of the legal requirements for the purchase, sale, transport, shipment, import and export of sea cucumbers and/or other wildlife protected by the Convention on International Trade in Endangered Species;

  d. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the trafficking of sea cucumbers and/or other wildlife protected by the Convention on International Trade in Endangered Species;

  e. tending to identify co-conspirators, criminal associates, or others involved in illegal trafficking in wildlife;

  f. tending to identify travel to or presence at locations where wildlife protected by the Convention on International Trade in Endangered Species were purchased, sold, transported and/or delivered;

g.  tending to identify the user of, or persons with control over or access to, the subject phone; or

h.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data above.

AFFIDAVIT IN SUPPORT OF

APPLICATION FOR SEARCH WARRANT

I, John W. Pritting, being duly sworn, depose, and state:

INTRODUCTION

1. I am a Special Agent ("SA") with the Department of the Interior, United States Fish and Wildlife Service ("USFWS"), Office of Law Enforcement. I am presently assigned to the San Diego, California, field office and have been so employed since March of 2016. In that capacity, I am responsible for investigating violations of, among other things, the Lacey Act, 16 U.S.C. § 3371, *et seq.*, and smuggling statutes under Title 18 of the United States Code. Prior to obtaining a position as an SA with the USFWS, I was employed as a Deputy Sheriff with the Napa County Sheriff's Office from 2014 to 2016. I was employed as a Game Warden for the California Department of Fish and Wildlife from 2011 to 2014. Before my civilian law enforcement career began, I was enlisted as a Security Forces officer (Military Police) in the United States Air Force from 1998 to 2002. I am a graduate of the Federal Law Enforcement Training Center, Criminal Investigator Training Program; the USFWS Special Agent Basic School; California Peace Officer Basic Training Police Academy; and the Air Force Security Forces Military Police Academy. I graduated with a Bachelor's Degree in Wildlife, Fish, and Conservation Biology from the University of California, Davis. I have over 15 years of combined law enforcement experience. In that time, I have investigated complex natural resource crimes involving violations related to the interstate and international trafficking of

natural resources.

2. As a USFWS SA, I have conducted or been involved in multiple search warrants relating to the illegal commercialization of protected fish and wildlife, and violations of federal natural resource laws including but not limited to the Lacey Act. I have read, studied, and received training on the laws enforced by the USFWS.

3. I make this affidavit in support of the government's Application for a Search Warrant for a cellular telephone found in the possession of **FERNANDO ANTONIO GODOY** (hereinafter "**Target Device**") incident to his arrest on September 19, 2024, at the Otay Mesa Port of Entry (entrance from Mexico into the United States). **Target Device** is briefly described as:

> Black iPhone 10
>
> Cellular number: 619-395-1909
>
> (assigned unique identifier: FP&F 2024250600062701-0003)
>
> ("**Target Device**")

4. I seek authority to search the **Target Device**, more fully described in Attachment A, for items, more fully described in Attachment B, which constitute evidence of violations of federal criminal law by **FERNANDO ANTONIO GODOY** relating to illegal trafficking in protected Sea Cucumbers, that is, Title 18, United States Code, Section 545, which prohibits smuggling, and importation contrary to law; Title 16, United States Code, Sections 1538 (c) and (d) and 1540(b), which prohibit knowingly engaging in trade or possessing

2

specimens traded in violations of the provisions of The Convention on International Trade in Endangered Species ("CITES"), and knowingly engaging in business as an importer of fish and wildlife without a license from the U.S. Fish and Wildlife Service.

5. The facts set forth in this affidavit are based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers in the United States and Mexico, and information gained through my training and experience. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation.

6. *Isostichopus fuscus* (Sea Cucumbers) are marine animals, found in the waters off the Gulf of California in Mexico, down to Central America (Peru) and out to the Galapagos islands. Since 2003, fuscus have been protected under Appendix III of CITES. Fuscus are prized in Asia and in the Asian communities in the United States for their value as a delicacy food item. A kilogram of this sea cucumber can sell for a range of $300.00 USD to $500.00 USD on the market, depending on the size, weight, sex, age, and thickness of the sea cucumber. The Sea Cucumbers imported by GODOY therefore have an estimated value on the market of at least $14,000.00 USD.

3

STATEMENT OF PROBABLE CAUSE

7. On September 19, 2024, at approximately 1630 hours, defendant FERNANDO ANTONIO GODOY entered the United States from Mexico at the Otay Mesa Port of Entry, as the driver and sole occupant in a Ford Flex (CA license plate 8YUW050). At the pre-primary inspection area, an Anti-Terrorism Contraband Enforcement Team ("A-TCET") Customs and Border Protection Officer ("CBPO") encountered GODOY and asked if GODOY had anything to declare. GODOY responded that he had nothing to declare except his dog. The CBPO asked GODOY where he was going, and GODOY replied that he was going to Chula Vista to go to Costco. The CBPO recognized GODOY as a regular crosser who had not been thoroughly inspected before because of the "vile nature" of his vehicle. The CBPO noticed an abnormal stench coming from GODOY's vehicle and referred GODOY to secondary inspection to be screened by X-ray (Z-portal).

8. In the secondary inspection lot, a CBPO screened the Ford Flex operated by GODOY and observed several anomalies within the dashboard of the vehicle. GODOY's vehicle was then referred to CBPOs in the secondary inspection lot for further inspection. Further inspection of GODOY's vehicle uncovered twelve (12) bags of sea cucumber concealed within the dashboard of the vehicle. The sea cucumbers found in GODOY's vehicle weighed approximately 36.20 kilograms. CBPOs then contacted United States Fish and Wildlife Service ("USFWS").

9. USFWS Special Agent ("SA") Pritting and Homeland Security

4

Investigations ("HSI") SA Seidy Gaytan responded and interviewed GODOY. GODOY was read his *Miranda* rights advisement and elected to waive his rights and speak with agents. GODOY stated that he met a man in Tijuana Mexico named Enrique Munoz approximately four (4) months ago. GODOY told agents that Munoz asked him if he would cross seafood into the United States for money. GODOY said Munoz told him the seafood was illegal because they did not have the proper paperwork to cross into the United States legally.

    10. GODOY told agents that Munoz would pay him between $150 USD and $300 USD for each crossing. GODOY said since May of 2024 he had crossed product into the United States for Munoz approximately two (2) or (3) times a week, averaging 48 crossings from Mexico into the United States with product concealed in his vehicle. GODOY told agents that Munoz would call him and instruct him where to leave his vehicle. GODOY would leave his vehicle at that location as instructed in Tijuana, Mexico for approximately one hour. Then, an unidentified person would pick up GODOY's vehicle and fill it with the product to be crossed.

    11. GODOY said he did not know specifically what was in his vehicle but was told by Munoz that the product in his vehicle was seafood. GODOY told agents that he assumed his vehicle was not being filled with anything more incriminating such as narcotics, weapons, or people because Munoz promised him that the product placed in his vehicle was seafood.

    12. GODOY said he would not see the product or know where it was

5

concealed within his vehicle. GODOY said he would then be instructed by Munoz where to take the vehicle in the United States once he crossed from Mexico into the United States. GODOY said he would usually take the vehicle to a McDonald's restaurant parking lot in Chula Vista where he would leave the vehicle unattended, with the keys in it, and come back to the vehicle an hour later. When he returned to the vehicle, the product would have been removed from the vehicle and the cash payment to him would be left in the vehicle. GODOY said he never saw the person who put the product in his vehicle or removed the product from his vehicle.

13. USFWS Wildlife Inspector Elba Benabe-Carlo and USFWS SA Resident Agent in Charge Eduardo Nieves both identified the sea cucumbers as genus fuscus, which are native to the Neotropical Americas, ranging from South America to Mexico, and the Galapagos. The Sea cucumber of the species Isostichopus fuscus has been listed on Appendix III of the CITES since 2003.

14. CITES is a treaty signed by over 180 nations (including the United States and Mexico) which established protocols for international trade in species covered by the treaty. There are three appendices to CITES listing various species, providing differing levels of protection to the species listed therein. The Endangered Species Act prohibits any person subject to the jurisdiction of the United States from engaging in any trade or possessing any specimens contrary to the provisions of CITES. 16 U.S.C. §1538(c)(1).

15. Pursuant to the federal regulations implementing CITES, an official CITES document is required to accompany all wildlife imports or exports of a species listed on a CITES Appendix. For imports from Mexico of a species listed on Appendix III, a CITES export permit from Mexico is required. 50 C.F.R. §23.20(e). If an individual wishes to travel internationally with their personally-owned wildlife subject to CITES, they may be exempt from other CITES requirements if they acquire and present upon entry a CITES certificate of ownership for the wildlife from the CITES management authority where they reside. 50 C.F.R. §23.44. In order to obtain a CITES certificate of ownership, the owner must be able to demonstrate that the wildlife was obtained lawfully. Id.

16. A check of the records of the USFWS indicated that there was no record of any CITES certificates offered for the importation, exportation, or trade of any sea cucumbers of this species for the period from September 19, 2023, through September 19, 2024, and no CITES certificate of ownership was issued to GODOY. USFWS Wildlife Inspector identified the sea cucumbers as genus fuscus, which are native to the Neotropical Americas, ranging from South America to Mexico, and the Galapagos. The Sea cucumber of the species Isostichopus fuscus has been listed on Appendix III of CITES since 2003.

17. CITES is a treaty signed by over 180 nations (including the United States and Mexico) which established protocols for international trade in species covered by the treaty. There are three appendices to

CITES listing various species, providing differing levels of protection to the species listed therein. The Endangered Species Act prohibits any person subject to the jurisdiction of the United States from engaging in any trade or possessing any specimens contrary to the provisions of CITES. 16 U.S.C. §1538(c)(1).

18. Pursuant to the federal regulations implementing CITES, an official CITES document is required to accompany all wildlife imports or exports of a species listed on a CITES Appendix. For imports from Mexico of a species listed on Appendix III, a CITES export permit from Mexico is required. 50 C.F.R. §23.20(e). If an individual wishes to travel internationally with their personally-owned wildlife subject to CITES, they may be exempt from other CITES requirements if they acquire and present upon entry a CITES certificate of ownership for the wildlife from the CITES management authority where they reside. 50 C.F.R. §23.44. In order to obtain a CITES certificate of ownership, the owner must be able to demonstrate that the wildlife was obtained lawfully. Id.

19. A check of the records of the USFWS indicated that there was no record of any CITES certificates offered for the importation, exportation, or trade of any sea cucumbers of this species for the period from September 19, 2023, through September 19, 2024, and no CITES certificate of ownership was issued to GODOY.

20. GODOY was arrested and booked into the San Diego Metropolitan Correction Center.

8

21. To lawfully import CITES protected Sea Cucumbers, or any other endangered species, a permit from the USFWS is required, pursuant to 50 C.F.R. §17.21-§17.23. A person who knowingly imports an endangered species without a permit has violated the Endangered Species Act, 16 U.S.C. §1538(a)(1)(A). In addition, a declaration (USFWS form 3-177) must be filed with the USFWS upon importation of any species listed as endangered, pursuant to 16 U.S.C. §1538(e) and 50 C.F.R. §14.61. Criminal penalties for knowing violations of all subsections of Section 1538 are found in Section 1540(b)(1).

22. Pursuant to another subsection of the Endangered Species Act, Section 1538(d)(1)(A), it is unlawful for any person to engage in business as an importer or exporter of fish or wildlife, without having first obtained permission of the Fish and Wildlife Service. The phrase "engage in business" means to import for commercial purposes. 50 C.F.R. §14.91. Federal regulations create a rebuttable presumption that more than eight specimens of any single species constitute a commercial quantity. 50 C.F.R. §14.4.

23. CITES is a treaty signed by over 180 nations (including the United States and Mexico) which established protocols for international trade in species covered by the treaty. There are three appendices to CITES listing various species, providing differing levels of protection to the species listed therein. Section 1538(c)(1) of Title 16 of the United States Code prohibits any person subject to the jurisdiction of

9

the United States from engaging in any trade in any specimens or portions of a specimen of a species covered by CITES contrary to the provisions of CITES. An official CITES document is required for all imports of a species listed on a CITES Appendix. For imports from Mexico of a species listed on Appendix I, an export permit or a certificate or origin from Mexico is required. 50 CFR 23.20(e).

24. Based on my experience and training, and conversations with others involved in enforcement of laws pertaining to fish and wildlife, I know that people involved in illegal trafficking in fish and wildlife, frequently send photographs of the wildlife to others, to demonstrate the species, size and stature. Persons trafficking in fish and wildlife, are also known to send photographs, text messages and emails to others regarding prices, transportation and delivery arrangements, as well as records of financial transactions involving the wildlife products. Such persons also are known to conduct internet research and save documents regarding the legal requirements for the purchase sale, transport, shipment, import and export of wildlife products.

25. Based on my training and experience, and conversations with other law enforcement agents, I know that dealers in exotic wildlife post images of their products on the internet and send images and messages via email, Facebook Messenger, WhatsApp, and other social media platforms to potential customers to facilitate sales, which are found on cell phones.

26. In particular, with respect to international sales, I know

10

that business is conducted via electronic mail and cell phones, including transmission of invoices and records of payment and shipping records, in order to facilitate the international transactions. I know that in other investigations I have seen shipping records, receipts, financial records, and documents sent via email, text messages and apps found on cell phones.

27. I also know that such businesses contact regulatory agencies (federal, state, local and foreign) via email and cell phone, seeking and providing information and documentation. Such businesses are also known to send and receive via email on links accessed via cell phones to informational sites on the internet relevant to their business.

28. Based on my experience and training in working international wildlife trafficking investigations, I know that individuals must communicate well in advance with sellers, to coordinate the logistics, invoices, bills of lading, flights, and payments of international shipments, and for purchasers to make arrangements to meet with the seller to inspect the wildlife and determine if purchase is to proceed. For this reason, I believe there is probable cause to believe that there is relevant data on the subject phone beginning on or about January 1, 2024.

29. Specifically, based on my experience and training, and all of the facts contained herein, there is probable cause to believe that the **Target Device** will contain the following:

30. Communications, records, or data including but not limited to

emails, text messages, photographs, audio files, videos, or location data:

    a. tending to indicate efforts to import, export, purchase, sell, transport and/or ship wildlife, protected by the CITES, including related financial information;

    b. consisting of images of wildlife protected by CITES;

    c. tending to indicate knowledge of the legal requirements for the purchase, sale, transport, shipment, import and export of wildlife protected by CITES;

    d. tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, phone numbers that may contain electronic evidence tending to indicate efforts to illegally traffic in wildlife;

    e. tending to identify co-conspirators, criminal associates, or others involved in illegal trafficking in wildlife;

    f. tending to identify travel to or presence at locations where wildlife was purchased, sold, transported and/or delivered;

    g. tending to identify the user of, or persons with control over or access to, the subject phone; or

    g. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data above.

    h. Limited to evidence of violations of Title 18 U.S.C § 371 (Conspiracy); Title 18, U.S.C. § 545 (Smuggling/Importation Contrary to Law); and Title 16 U.S.C. § 1538 (c) and (d) and 1540 (b)(1) (Unlawful Trafficking in Wildlife), for the period from January 1, 2023 to present.

<u>Cellular Telephone</u>

31. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and

types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "airplane mode," which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time, labor intensive, and may take weeks or longer.

13

32. Following the issuance of this warrant, I will collect the Target Devices and subject them to analysis. All forensic analysis of the data contained within the devices and their memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

33. Based on the foregoing, identifying and extracting data for a cellular telephone subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court, and the Target Devices will be returned to their owner.

## CONCLUSION

34. Based on the foregoing, there is probable cause to believe the items identified in Attachment B constitute evidence of violations of Title 18, United States Code, §§ 545 and Title 16, United States Code, §§1538 and 1540, and will be found on the Target Devices to be searched as described in Attachment A.

I declare under penalty and perjury the foregoing is true and correct to the best of my knowledge and belief.

14

```
_____
John Pritting, Special Agent
U.S. Fish and Wildlife Service,
Office of Law Enforcement
```

Sworn and attested to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1 on October __17__, 2024.

```
_____
HONORABLE VALERIE E. TORRES
UNITED STATES MAGISTRATE JUDGE
```

15